IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RICHARD J. FORBES,

   Plaintiff,

v.

WARDEN WILLIAM BAILEY, ET AL.,

   Defendants.

Civil Action No.: BAH-24-2252

**MEMORANDUM OPINION**

Self-represented Plaintiff Richard J. Forbes, who is currently incarcerated at Eastern Correctional Institution ("ECI") in Westover, Maryland, filed this civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that Defendants failed to ensure he received emergency medical attention. ECF 5 (Amended Complaint); ECF 16 (Supplement). Currently pending are Defendants Warden William Bailey, Correctional Officer Samuel Lopez, and Correctional Officer Marc Jones' (the "State Defendants") Motion to Dismiss or, in the Alternative, for Summary Judgment.[1] *See* ECF 20. Defendant Alysia Keene, an employee in the medical unit at ECI, has filed her own Motion to Dismiss or, in the Alternative, for Summary Judgment along with a Motion to Seal.[2] *See* ECF 38 (Motion to Seal); ECF 39 (Sealed Motion). Forbes was advised of his opportunity to respond to the dispositive motions and the risks of failing to do so. *See* ECF 22 (Rule 12/56 Notice for State Defendants' Motion (ECF 20)); ECF 40 (Rule 12/56 Notice for Keene's Motion (ECF 39)). Forbes has responded to the Motions. ECF 23 (Response to State Defendants' Motion); ECF

---

[1] The Clerk will be directed to amend the docket to reflect Defendants' full and correct names.

[2] For the reasons noted in the motion, Keene's Motion to Seal (ECF 38) is granted and Exhibits A1 through A7 of her dispositive motion shall remain sealed. The other portions of the Motion (ECF 39, 39-1, and 39-2) will be unsealed by the Clerk.

29 (Supplement to Response); ECF 41 (Response to Keene's Motion). State Defendants replied. ECF 28 (Response to Motion); ECF 32 (Response to Supplement). No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2025). For the reasons stated below, Defendants' Motions will be GRANTED.

## I. BACKGROUND

### A. Factual Allegations

Forbes alleges that on the morning of March 29, 2024, he was in severe back pain which prevented him from getting out of bed. ECF 5, at 4. Forbes wears a back brace, takes medication, and sleeps on a bottom bunk due to his painful condition. *Id.* He alleges that his cellmate called for Officer Jones, who then contacted medical personnel. *Id.* Jones relayed to Forbes that Forbes was supposed to "fill out a sick call slip" to be seen in the medical department which, according to Forbes, "takes up to 3 weeks to be called" to see medical staff. *Id.* Forbes complains that Warden Bailey failed to intervene on his behalf after he filed a grievance about the issue. *Id.* at 4, 6. Forbes also alleges that he talked to Officer Lopez about his need for medical attention. *Id.* at 6. Lopez told Plaintiff that Lopez did contact the medical department but was told by Keene that Plaintiff "should've filled out a sick call" slip. *Id.* at 6. Weeks later, when he was seen by Keene, Plaintiff alleges that he explained to her that his earlier request "was an emergency," however Keene purportedly blamed Officers Jones and Lopez for not bringing Plaintiff to the medical department. *Id.* Forbes complains that ongoing back pain inhibits his ability to stand. *Id.* He alleges that his "back hurts so bad [that he] can barely stand" and reports that he "received no medical treatment for weeks now[, is] on a medication which isn't helping[,]" and alleges that he has not seen a "specialist" or had "X-rays . . . taken." He seeks monetary damages of $2,000,000

2

"for pain and suffering" including "lack of sleep on a thin mattress" and requests "better treatment from [] medical staff." *Id.*

In his supplement to the complaint, Forbes again asserts that officials failed to send him to a specialist or obtain x-rays to properly treat his back pain. ECF 16, at 1. Forbes further complains that he has needed a tooth extraction since February 2022 and has not received a C-PAP machine for his sleep apnea. *Id.* Finally, Forbes asserts that his First Amendment rights were violated on May 10, 2024, when he was denied access to a Friday worship service because prison staff "fabricated a story saying [the] compound was locked down." *Id.* at 2. He states that other groups were able to meet despite the alleged lockdown and further asserts that his Wednesday worship services have also been cancelled while other groups' activities have not been cancelled. *Id.*

### B. State Defendants' Response

State Defendants move to dismiss the amended complaint or, alternatively, for summary judgment in their favor. *See* ECF 20. They argue that (1) Forbes has not exhausted his administrative remedies; (2) State Defendants are immune in their official capacities; (3) Forbes does not allege Warden Bailey was personally involved in any alleged violations of the law; (4) Forbes failed to show his Eighth Amendment rights were violated; and (5) State Defendants are entitled to qualified immunity. ECF 20-1, at 8-19. In addition to a Memorandum of Law in support of the Motion, State Defendants provide declarations of the ECI Medical Records Supervisor, Marc Jones, Samuel Lopez, and Robin Woolford as well as Forbes' medical records. ECF 20-2 through 20-6; ECF 21-2.

Correctional Officer Marc Jones avers that on the morning of March 29, 2024, Forbes' cellmate called him to their cell where Forbes was lying on the floor, apparently in pain. ECF 20-4, at 1 ¶ 2 (Jones Declaration). Forbes was unable to stand which caused Jones concern as he had

3

never seen Forbes in that condition previously. *Id.* Jones called the medical staff for immediate care; he was instructed to have Forbes file a sick call slip. *Id.* at ¶ 3. Jones gave Forbes a sick call slip and called Officer in Charge Samuel Lopez. *Id.* at ¶ 3-4. Officer Lopez, who provides his own declaration, attests that Jones relayed Forbes' request for urgent medical attention. ECF 20-5, at 1 ¶ 2. Lopez notes that while he could "not recall what Mr. Forbes' specific health complaint was," Lopez did recall that he "did not believe it was a true medical emergency based on Officer Jones' description of Mr. Forbes' condition." *Id.* at ¶ 4. Because Lopez was the Officer in Charge, he was in an office-based post and did not visit Forbes' cell to observe his condition. *Id.* at ¶ 4. However, he alleges that the "called the medical staff to reiterate the request that Mr. Forbes be sent down for immediate care" but "[t]he contractual medical provider called [him] back and instructed [him] to have Mr. Forbes complete a sick call slip [] because they were very busy that day." *Id.* at ¶ 5. Neither Jones nor Lopez is aware of whether Forbes submitted a sick call slip. *Id.* at ¶ 6; ECF 20-4 at ¶ 5. Arin Healy, the ECI Medical Records Supervisor, attests that a review of Forbes' "hard chart" does not show that he filed a sick call slip "on or around March 29, 2024." ECF 20-2, at 1 ¶ 4. The medical records submitted also do not include any sick call requests submitted on the date of the alleged incident. *See* ECF 21-2, at 109-119.

Robin Woolford, Deputy Director of the Inmate Grievance Office ("IGO"), notes in a declaration that "a review of the relevant IGO records confirm that Richard Forbes has not filed any grievances with the IGO during" from 2020 through January 31, 2025. ECF 20-6, 1 at ¶ 3-4. Forbes, however, appears to contend in his amended complaint that he did file grievances with both the Commissioner of Correction and the IGO but did not receive a response from either office. ECF 5, at 5. Forbes avers in his response to Warden Bailey's motion to dismiss that he "does have sick call request[s] about his ailment" as well as "written ARP's with the facility about said sick

4

calls[.]" ECF 23, at 1. Though Forbes does not provide a date for these filings in his amended complaint or response to ECF 20, in a supplemental filing docketed on March 7, 2025, Forbes provides ARP ECI-0530-24, dated March 29, 2024, a "request for an administrative remedy" in which he complains about Jones and Lopez's actions and alleges that "medical refused to see [him and] instead handed [him] a paper to fill out a sick call." ECF 29-1 at 6-7. That form reflects that Forbes was instructed to resubmit it with "additional information" by April 16, 2024. *Id.* at 6. However, none of the other ARPs Forbes includes in his supplement show that he resubmitted this ARP as directed. Records provided by Forbes also reflect that Forbes submitted ARP ECI-0672-24, dated April 25, 2024, complaining that he had not received adequate medical treatment for his back pain, a complaint that was ultimately found meritorious. *Id.* at 8-9.[3] Forbes also submitted ARPs ECI-0835-24, ECI-1082-24, ECI-1181-24, and ECI-1258-24 regarding the cancellation of Islamic religious services. *Id.* at 16-22. These complaints were all dismissed for procedural reasons. *See id.* The remaining ARPs Forbes includes in his supplement either do not have a case number – indicating that they were never submitted – or were submitted after the initiation of this suit or do not relate to the claims raised in the amended complaint. *See id.* at 12-14, 23-26.

**C. Defendant Keene's Response**

Defendant Keene moves for dismissal, stating that Forbes failed to state a claim upon which relief can be granted and failed to complete the conditions precedent to filing a medical malpractice claim. Alternatively, Defendant Keene moves for judgment in her favor, stating that she did notviolate Forbes' Eighth Amendment rights and is entitled to qualified immunity. ECF 39-1.

---

[3] The "Response" to the April 25, 2024 ARP notes that Forbes was "evaluated by a provider for chronic care" and further states that "[p]er documentation there were no new complaints and no specific injury for lower back pain." ECF 29-1, at 8.

Keene submits Forbes' medical records, filed under seal, in support of her motion. ECF 39-3 through 39-6.

Those records reflect that on January 3, 2024, Forbes was seen for a chronic care visit by CRNP Bethany Roderer and RN Sara Johnson. ECF 39-3, at 2–6. They discussed Forbes' mild upper respiratory infection, mental health, and back pain. *Id.* at 2. Forbes reported that ibuprofen was adequate to treat his pain. *Id.* He restated that his medications were effective to NP Deirdre Mull during a behavioral health chronic care visit on January 22, 2024. ECF 39-4, at 3.

However, on February 24, 2024, Forbes filed a sick call slip asserting severe pain in his lower back making it difficult for him to stand and walk. ECF 39-5, at 2. In response to his request, Forbes was seen on March 3, 2024, by RN Jennifer Adrion. ECF 39-6, at 2–5. Forbes was still in severe pain during the appointment. *Id.* at 3. RN Adrion noted that Forbes' pain had been treated with ibuprofen and muscle rub in the past and that the muscle rub reduced Forbes' pain from a 9 to a 6 on a 10-point scale. *Id.* RN Adrion ordered the muscle rub topical cream and notified a provider that Forbes was requesting a back brace. *Id.* at 5.

Forbes returned to chronic care on March 7, 2024. ECF 39-7, at 2–5. Dr. Paul Matera assessed his back pain and noted that he had a mildly reduced range of motion. *Id.* at 4. Dr. Matera advised Forbes to increase his activity and ordered a follow-up visit to renew medications. *Id.* at 5. Records reflect that Forbes received an XL back support brace on March 14, 2025. ECF 39-8, at 4. Forbes returned to chronic care on March 21, 2025, at which time Dr. Matera renewed his medications. ECF 39-9, at 1. Defendant Keene adopts and incorporates the declaration of the ECI Medical Records Supervisor Arin Healey submitted with the State Defendants' Motion, in which they aver that Forbes did not file a sick call slip on or around March 29, 2024. ECF 39-1 at 9 (citing ECF 20-2).

In his opposition, Forbes denies ever having told medical personnel that the ibuprofen was effective in treating his back pain. *See* ECF 41, at 2. He also denies ever having received a full body examination by a doctor. *Id.*[4]

## II. LEGAL STANDARDS

Defendants argue that the amended complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), or, alternatively, that summary judgment should be granted in their favor pursuant to Fed. R. Civ. P. 56. *See* ECF 20-1; ECF 38-1. A motion to dismiss styled in the alternative as a motion for summary judgment implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment is permissible where a plaintiff has notice that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). When a movant expressly captions its motion to dismiss "in the alternative" as one for summary judgment and submits matters outside the pleadings for the Court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur as the Court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261; *see also Willey v. Bd. of Educ. of St. Mary's Cnty.*, 557 F. Supp. 3d 645, 657 (D. Md. 2021) ("Notably, 'the Federal Rules do not prescribe that any particular notice be given before a Rule 12

---

[4] Forbes also attaches an ARP filed in March of 2025 regarding a failure to be seen during sick call as well as three sick call requests filed in 2025. *See* ECF 41-1 (ARP submitted March 25, 2025); ECF 41-2 (Sick call signed on March 16, 2025); ECF 41-3 (Sick call signed on January 1, 2025); ECF 41-4 (Sick call signed on April 21, 2025). However, the allegations in the amended complaint arise from misconduct alleged to have occurred in March 2024, and thus neither the ARP nor the sick calls appear to have any bearing on the issues presently before the Court.

motion is converted to a Rule 56 motion.'" (quoting *Ridgell v. Astrue*, No. CIV.A. DKC 10-3280, 2012 WL 707008, at *7 (D. Md. Mar. 2, 2012))).

Because Defendants filed their motions as motions to dismiss or, in the alternative, for summary judgment, Forbes was on notice that the Court could treat the motions as ones for summary judgment and rule on that basis. Indeed, Forbes himself attaches exhibits to several of his responses. *See* ECF 29–1, 1–30; ECF 41-1 through ECF 41-4. Accordingly, the Court will review Forbes' claims against Defendants under the Rule 56(a) standard and will consider the exhibits filed in support of Defendants' Motions where appropriate.

Rule 56 provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). "[I]n ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255) (second alteration in original). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

The Court is mindful that Forbes is a self-represented litigant. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does not mean that a court can "ignore an obvious failure to allege facts setting forth a plausible claim for relief." *Sheehan v. Saoud*, 650 F. App'x 143, 152 (4th Cir. 2016) (citing *Weller v. Dep't of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 391 (4th Cir. 1990)). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

### III. DISCUSSION

#### A. Exhaustion of Administrative Remedies

Dismissal of Forbes' claims asserted against the State Defendants is appropriate because Forbes failed to exhaust available administrative remedies prior to filing his complaint. The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Chase v. Peay*, 286 F. Supp. 2d 523, 527 (D. Md. 2003) (finding that "the exhaustion provision" of the PLRA "plainly extends" to suits regarding prison conditions). Exhaustion under § 1997e(a) is mandatory, and therefore a plaintiff must exhaust his available administrative remedies before a court can hear his claim. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA . . . ."); *Ross v. Blake*, 578 U.S. 632, 638 (2016) (finding that "a court may not excuse a failure to exhaust").

Consequently, if Forbes has not properly presented his claims through an available administrative remedy procedure, the claims must be dismissed pursuant to the PLRA.  *See Ross*, 578 U.S. at 639.

Administrative exhaustion under § 1997e(a) is not, however, a jurisdictional requirement and does not impose a heightened pleading requirement on the detainee.  *Jones*, 549 U.S. at 215–16.  Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants.  *See id.*; *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017).  The Court may dismiss a claim on this ground only if "the defendants raise the issue as an affirmative defense and the inmate has had an opportunity to respond to the affirmative defense" or in "the rare, exceptional instance where administrative exhaustion"—or lack thereof—is "apparent on the complaint's face." *Custis*, 851 F.3d at 362 (citing *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008)).

To exhaust his administrative remedies, an inmate must complete "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006); *Moore*, 517 F.3d at 725.  This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).  A court will not dismiss a claim as unexhausted "if a prisoner, through no fault of his own, was prevented from availing himself of [an administrative remedy]." *Moore*, 517 F.3d at 725.

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any Division of Corrections official or employee.  Md. Code Ann., Corr. Servs. ("C.S.") § 10-206(a).  However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process

10

before filing a grievance with the IGO. *See* C.S. § 10-206(b). There is an established administrative remedy procedure process that applies to all Maryland prisons. Md. Code Regs. ("COMAR") 12.02.28.01. Therefore, when the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO.

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP with his facility's "managing official," COMAR 12.02.28.05(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and defined under C.S. § 1-101(m) as "the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame. The prisoner has 30 days to file an appeal to the Commissioner of Corrections. COMAR 12.02.28.14(B)(5).

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO.[5] COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B). When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face,"

---

[5] If the Commissioner fails to respond, the grievant shall file their appeal within 30 days of the date the response was due. COMAR 12.07.01.05(B)(2).

the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision of the Secretary of the Maryland Department of Public Safety and Correctional Services ("DPSCS") for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208; COMAR 12.07.01.07-.08. The conduct of such hearings is governed by statute. *See* C.S. § 10-208; COMAR 12.07.01.07(D); *see also* Md. Code Ann., State Gov't § 10-206(a)(1).

A decision of the administrative law judge ("ALJ") denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2). However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* COMAR 12.07.01.10(B); C.S. § 10-209(b)(2)(c).

The final agency determination is subject to judicial review in Maryland state court, so long as the claimant has exhausted their remedies. *See* C.S. § 10-210. An inmate need not, however, seek judicial review in state court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g.*, *Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones*, 549 U.S. at 219; *see Moore*, 517 F.3d at 725 (explaining that exhaustion means providing prison officials with the

12

opportunity to respond to a complaint through proper use of administrative remedies). The exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 286 F. Supp. 2d at 530; *Gibbs v. Bureau of Prison Off.*, 986 F. Supp. 941, 943–44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level").

The record evidence shows that Forbes did not appeal the relevant ARPs to the Commissioner of Correction or the IGO. State Defendants have provided a declaration demonstrating that Forbes has not submitted any appeals to the IGO during the relevant time period, meaning he could not have completed the exhaustion process. Forbes' opposition and the attached documents fail to establish that he completed the exhaustion process for any of his claims against State Defendants. As to claims related to his medical care on March 29, 2024, the lone ARP provided shows that while it was submitted, it was promptly rejected with a notation requesting that it be re-submitted with additional evidence. ECF 29-1, at 6. There is nothing in the record reflecting that it was resubmitted, nor does Forbes claim that it was. Thus, even assuming Forbes did submit the ARP related to the March, 29, 2024,[6] there is no dispute on the

---

[6] Forbes also raises additional possible claims in a supplement to the complaint filed on December 13, 2024, including sleep apnea issues, tooth extraction problems, and allegations that back pain continued to go untreated. *See* ECF 16, at 1. Putting aside that these allegations fail to contain "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007), the record reflects that they were not administratively exhausted. To the

13

record before the Court that he failed to resubmit it even after being advised of its deficiencies. As such, he failed to exhaust administrative remedies and dismissal is appropriate. *See Mills v. Iser*, Civ. No. ELH-22-1691, 2023 WL 5750414, at *24 (D. Md. Sept. 5, 2023). However, as Forbes failed to exhaust, the dismissal is without prejudice to refiling once administrative remedies have been exhausted.[7] The Court need not consider State Defendants' additional defenses.

### B. Eighth Amendment

Even assuming that administrative exhaustion was satisfied as to Forbes' claims related to medical care, they nonetheless fail as to Keene. The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). "Scrutiny under the Eighth Amendment is not limited to those punishments

---

extent the supplement alleges obstacles preventing religious worship on May 10, 2024 and various dates in November and December of 2024, these allegations, too, go without administrative exhaustion. Records provided by Forbes do show that an ARP related to worship services on May 10, 2024 was submitted to the warden, *see* ECF 29-1, at 16–17, however the record is bare as to its disposition and there is no evidence any disposition was appealed or that an appeal was prevented by another investigation. *See Younger v. Crowder*, 79 F.4th 373, 380 (4th Cir. 2023). Other ARPs address alleged denial of worship services on other dates. One challenged the alleged cancelation of "Islamic Studies/Worship" "since the 2d week in November," presumably of 2024. ECF 29-1, at 23. However, this ARP was dismissed for procedural reasons because it was filed January of 2025 and thus was untimely. *Id.* Dismissal due to failure to exhaust is nonetheless warranted here as there is no indication in the record that this decision was appealed. *See Drummond v. Foxwell*, Civ. No. ELH-18-1105, 2019 WL 1790285, at *10 (D. Md. Apr. 24, 2019) (noting that "the PLRA requires that inmates exhaust **all** available remedies properly") (emphasis in original).

[7] While State Defendants have moved for summary judgment, and the Court has considered evidence attached to the motion in reaching the conclusion herein, the Fourth Circuit has advised that dismissal for failure to exhaust should be without prejudice. *See Moss v. Harwood*, 19 F.4th 614, 623 n.3 (4th Cir. 2021) (collecting cases); *Germain v. Shearin*, 653 F. App'x 231, 234–35 (4th Cir. 2016) (finding dismissal "mandatory" for failure to exhaust and affirming district court's grant of summary judgment but modifying order to be dismissal without prejudice).

14

authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *accord Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson*, 877 F.3d at 543.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834–38 (1994); *see also Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017); *King*, 825 F.3d at 218; *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see, e.g.*, *Scinto*, 841 F.3d at 228 (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

After a serious medical need is established, a successful Eighth Amendment claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 839–40. Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that

his[/her] actions were inappropriate in light of that risk.'" *Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Rather, a supervisor may be liable for the violations of their subordinates if the supervisor knew the subordinates engaged in conduct that posed an unreasonable risk of constitutional injury and failed to respond in such a manner that gives to an inference of deliberate indifference or tacit authorization of their subordinates' bad acts. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Even construing the facts in the light most favorable to Forbes, the Court cannot find that Defendant Keene failed to provide him adequate medical care. First, Forbes' bare-bones allegations that he did not receive a necessary tooth extraction nor a C-PAP machine, see ECF 16, at 1, must be dismissed for failure to state a claim as "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted). Forbes also does not explain if or how Keene was personally involved in these failures. Forbes alleges nothing more than conclusory allegations and therefore cannot maintain an Eighth Amendment claim against Defendant Keene for failure to provide such treatment.

His allegations related to back pain do not fare any better. The record shows that though Forbes unquestionably suffers from back pain, medical personnel were aware of this fact and were seeing him consistently in chronic care. Uncontroverted records reflect that Forbes was provided ibuprofen, muscle rub, and a back brace over the course of three months. Even crediting Forbes' assertion that statements in the medical record attributed to him purportedly affirming that the ibuprofen was effective are, in fact, false, this does not change the analysis. At most, Forbes disagrees with the treatment plan followed by the medical staff at ECI. Such a disagreement is insufficient to establish an Eighth Amendment violation since "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)); *accord Jackson*, 775 F.3d at 178 ("[W]e consistently have found such disagreements to fall short of showing deliberate indifference."). No special circumstances are present here, and therefore the Court does not find that Forbes was denied adequate medical care for his back pain.

Moreover, the record does not show that Defendant Keene was ever personally involved in Forbes' care outside of the alleged call with Officer Lopez in which she instructed that Forbes should file a sick call. Forbes therefore cannot establish either personal or supervisory liability for Keene. It is apparent from the record that Forbes did not file a sick call on or about March 29, 2024, which, under the circumstances, he was required to do. Officer Lopez, despite not personally observing Forbes, did not think his condition emergent, and there is nothing in the record to otherwise establish that Keene was subjectively aware that Forbes was having a medical emergency. Therefore, as Forbes was being regularly seen for his back pain, Keene was not reckless in telling Forbes to file a sick call. Defendant Keene is entitled to summary judgment in her favor.[8]

## IV. CONCLUSION

For the foregoing reasons, State Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment will be granted and the amended complaint dismissed without prejudice pursuant to Fourth Circuit precedent. Defendant Keene's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, construed as a motion for summary judgment, is granted as to Forbes' Eighth Amendment claim. Forbes' state law medical malpractice claim is dismissed without prejudice.

A separate Order follows.

__8/29/2025_____                                      ____/s/_____
Date                                                    Brendan A. Hurson
                                                        United States District Judge

---

[8] "When, as here, the federal claim is dismissed early in the case, the federal courts are inclined to dismiss the state law claims without prejudice rather than retain supplemental jurisdiction." *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-727 (1966). Accordingly, to the extent Forbes raises a medical malpractice claim, the Court declines to retain its supplemental jurisdiction.